Argued January 21, affirmed in part; reversed in part March 22, opinion modified May 17 (25 Or App 407, 549 P2d 1141), reconsideration denied July 14, petition for review denied September 21, 1976

SPRINGFIELD EDUCATION ASSOCIATION,
*Petitioner-Cross-Respondent*

*v.*

SPRINGFIELD SCHOOL DISTRICT NO. 19,
*Respondent-Cross-Petitioner,*
EMPLOYMENT RELATIONS BOARD, *Respondent,*
SCHOOL DISTRICT NO. 1, MULTNOMAH COUNTY
et al,
*Intervenors-Cross-Petitioners.*

(CA 4948)

EUGENE EDUCATION ASSOCIATION,
*Petitioner-Cross-Respondent,*

*v.*

EUGENE SCHOOL DISTRICT NO. 4J,
*Respondent-Cross-Petitioner,*
SCHOOL DISTRICT NO. 1, MULTNOMAH COUNTY
et al,
*Intervenors-Cross-Petitioners.*

(CA 5135)

SOUTH LANE EDUCATION ASSOCIATION,
*Petitioner-Cross-Respondent,*

*v.*

SOUTH LANE SCHOOL DISTRICT NO. 45J3,
*Respondent-Cross-Petitioner,*
SCHOOL DISTRICT NO. 1, MULTNOMAH COUNTY
et al,
*Intervenors-Cross-Petitioners.*

(CA 5134)

(3 cases consolidated)

547 P2d 647

*Henry H. Drummonds,* Eugene, argued the cause for petitioners-cross-respondents. With him on the briefs were Kulongoski, Heid, Durham & Drummonds, Eugene.

*Bruce Smith,* Eugene, argued the cause for respondents-cross-petitioners. On the brief were Young, Horn, Cass & Scott, Eugene; Moore, Wurtz & Logan, Springfield; Ackley and Kelsay, Cottage Grove; and Richard E. Miller and Miller, Moulton & Andrews, Eugene.

*Mark C. McClanahan,* Portland, argued the cause for intervenors-cross-petitioners. On the brief for School District No. 1, Multnomah County, were Miller, Anderson, Nash, Yerke & Wiener, Portland. On the brief for Oregon School Board Association were Harms & Harold, Portland.

Bruce Bischof, P.C., Lake Oswego, filed a brief amicus curiae on behalf of respondents-cross-petitioners.

James B. Kenin and Willner, Bennett, Riggs & Skarstad, Portland, filed a brief amicus curiae on behalf of Oregon Federation of Teachers for petitioner-cross-respondent Springfield Education Association.

No appearance for respondent Employment Relations Board.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

THORNTON, J.

## THORNTON, J.

Three cases arising under the 1973 amendments to the Public Employe Collective Bargaining Law, Oregon Laws 1973, ch 536 p 1166 (ORS 243.650 to 243.782), have been consolidated for the purposes of appeal from the decisions of the Employment Relations Board (ERB): *Springfield Education Association v. Springfield School District No. 19; South Lane Education Association v. South Lane School District No. 45J3;* and *Eugene Education Association v. Eugene School District No. 4J.*

The education associations, the exclusive bargaining representatives of the teachers within the meaning of ORS 243.650(8), sought to bargain with the school boards on some 92 separate items which they contended were mandatory bargaining subjects under ORS 243.650(7). In each case the school board refused to bargain on numerous subjects presented on the ground that they were not mandatory bargaining subjects.

Each education association then filed an unfair labor practice complaint with ERB alleging that the districts refused to bargain as required by ORS 243.672(1)(e). All parties appeal[1] from ERB's decision that some of the questioned subjects were required bargaining subjects and some were not.

The following are among the subjects which ERB found to be permissive, but not mandatory, subjects for bargaining: class size, course assignments, transfer procedures, the school calendar, the selection of substitute teachers and the use of teachers' aides.

The following are among the subjects which ERB found to be mandatory subjects for bargaining: daily teaching loads, required planning periods, final responsibility for grading, and a just cause provision for teacher reprimand.

---

[1]The education associations appeal each subject which ERB found not to be a mandatory subject. The school districts appeal only as to a portion of the subjects which ERB found to be mandatory subjects.

As a result of the enactment of the above law, public employers such as school districts, ORS 243.650(18), are required to bargain over matters of "employment relations" with the bargaining representative of their employes. To refuse to do so is an unfair labor practice, ORS 243.672(1)(e). ORS 243.650(7) defines "employment relations":

> " 'Employment relations' includes, *but is not limited to,* matters concerning direct or indirect monetary benefits, hours, vacations, sick leave, grievance procedures and *other conditions of employment.*" (Emphasis supplied.)

The central issue before ERB was then whether the proposed subjects for bargaining are matters of "employment relations."

An important preliminary issue is the scope of review by this court of decisions of ERB. As to factual determinations, our review is limited to determining whether the findings are supported by reliable, probative and substantial evidence in the record, ORS 183.480(7)(d). In this regard we conclude that ERB's factual decisions are clearly supported by the record.

A more difficult question is our scope of review of questions of statutory interpretation and the actions of ERB in "fleshing in" a vague statutory scheme.

■ Interpretation of an Act by the agency entrusted with its administration is generally given careful consideration by the courts. *Board v. Hearst Publications,* 322 US 111, 64 S Ct 851, 88 L Ed 1170 (1944) (a case involving the National Labor Relations Board); *Van Ripper v. Liquor Cont. Com.,* 228 Or 581, 365 P2d 109 (1961).

The federal courts, in determining whether a particular subject is a mandatory bargaining subject under the National Labor Relations Act, have given great weight to the decisions of the National Labor Relations Board. *N.L.R.B. v. International Hod Carriers, B. & C. L. U. of A.,* 384 F2d 55 (9th Cir), *cert*

*denied* 390 US 920 (1968); *Meat Cutters v. Jewel Tea,* 381 US 676, 85 S Ct 1596, 14 L Ed 2d 640 (1965) *(dictum).*

The Court of Appeals of New York and the Supreme Court of Nevada have followed a similar rule of deference to the decisions of their public employe relations boards as to what constitutes a mandatory bargaining subject. *West Irondequoit Teachers Ass'n. v. Helsby,* 35 NY2d 46, 315 NE2d 775, 358 NYS2d 720 (1974); *Clark Co. Sch. Dist. v. Local Gov't,* 90 Nev 442, 530 P2d 114 (1974).

In *West Irondequoit* the New York agency had determined that the subject of class size was not a mandatory bargaining subject under a statute requiring bargaining on all "terms and conditions of employment." The court of appeals determined that its scope of review was limited to a determination of whether the agency's decision was "arbitrary and capricious or an abuse of discretion." 358 NYS2d at 722.

■■ We believe the Oregon legislature intended that a similar approach would be followed under Oregon's statutory scheme. The legislature, by enacting the Public Employe Collective Bargaining Law and giving ERB the authority to administer that law evinces an intent to entrust ERB with the primary responsibility for resolving labor disputes in the public sector. Inherent in this grant of authority is the power to interpret and construe the statutory scheme which ERB was created to implement. ORS 243.650(7) being within that statutory scheme, we must affirm ERB's interpretation and "fleshing in" of that section unless it is "unlawful in substance or procedure." ORS 183.-480(7)(a). *Cf., Van Ripper v. Liquor Cont. Com.,* supra; *Gouge v. David et al.,* 185 Or 437, 202 P2d 489 (1949).

We now consider whether the interpretation given ORS 243.650(7) by ERB was unlawful in substance, i.e., contrary to law or arbitrary, capricious, unreasonable and an abuse of discretion.

[ 757 ]

The education associations argue that from the legislative history of the organic Act, Oregon Laws 1973, ch 536, it is clear that subjects such as class size and curriculum development were intended to be mandatory bargaining subjects. The basis for their argument is the defeat of amendments to House Bill 2263, both in the House and the Senate, which would have made it clear that such subjects were not mandatory subjects for collective bargaining.

■ We do not agree that such an inference should be drawn from the defeat of the above amendments. First, the amendments in question contain numerous other provisions, many of which were controversial and hotly debated. Therefore, the defeat of the entire package tells us nothing regarding the legislative intent as to any one particular section thereof. Secondly, the defeat of an amendment, even one concerning only one substantive aspect of a bill, is of dubious value in determining legislative intent. Dickerson, The Interpretation and Application of Statutes, at 160 (1975). We conclude that the legislative history of ORS 243.650(7) is not determinative.

Turning to the language of the statute itself, we note that it is couched in extremely broad terms. The phrase "conditions of employment" without further definition furnishes little in the way of guidelines as to what the legislature intended to be mandatory subjects of collective bargaining. It is also unclear what, if anything, the legislature intended by including the language "* * * but is not limited to * * *." We are of the opinion that this phrase indicates that the enumerated items following it are but examples of subjects which are "conditions of employment." Since the enumerated items are followed by the phrase "and other conditions of employment," the "* * * but is not limited to * * *" language adds nothing to the breadth of issues which are mandatory bargaining subjects. The final question therefore remains whether the disputed subjects are "conditions of employment."

■ ERB correctly recognized that nearly everything that goes on in the schools affects teachers and is therefore arguably a "condition of employment." ERB also realized that many of the matters which have a substantial effect on teachers contain a measure of educational policy. As we view the issue, ERB's conclusion that matters which to a large extent involve questions of educational policy are not mandatory subjects for bargaining is not unlawful in substance. Given our limited review as discussed above, we therefore affirm ERB's decision, except as noted below. Labor relations boards and courts in other jurisdictions have reached similar conclusions. *Dunellen Bd. of Ed. v. Dunellen Ed. Assn.,* 64 NJ 17, 311 A2d 737 (1973) (class size, curriculum, transfers, work assignments held not mandatory bargaining subjects); *School Dist. of Seward Education Assn. v. School Dist. of Seward,* 188 Neb 772, 199 NW2d 752 (1972) (class size, work schedules and transfers held not mandatory subjects); *Burlington Cty. Col. Fac. Assoc. v. Bd. of Trustees,* 64 NJ 10, 311 A2d 733 (1973) (the school calendar held not a mandatory subject); *Aberdeen Ed. Ass'n v. Aberdeen Bd. of Ed.,* — SD ——, 215 NW2d 837 (1974) (class size and the availability of materials and supplies held not mandatory bargaining subjects).

All aspects of ERB's decision cannot be upheld, however. We refer to those portions where ERB determined that the subject of a school district's contracting with the University of Oregon over student teacher programs was a prohibited subject for bargaining by virtue of ORS 342.120(6), 342.155, 342.980, and Administrative Rules for Oregon Education, 36-005 to 36-030.

As we understand ERB's reasoning in so holding, it is that the school boards have certain duties imposed upon them by statute and that to bargain over subjects related to these duties would amount to an illegal delegation of their duties. On appeal the school districts advance the same theory in support of their contention

that it is illegal for them to bargain over matters which rest primarily in the policy or governmental domain, or which are entrusted to their exclusive discretion by law. Subjects such as curriculum development, nonteaching duties, staff organization and credit towards tenure are among those urged to be prohibited.

We do not find this argument persuasive. *See, Joint School Dist. No. 8 v. Wis. E. R. Board,* 37 Wis2d 483, 155 NW2d 78 (1967). The duty of bargaining does not entail any obligation to agree, only an obligation to negotiate in good faith. ORS 243.672(1)(e). To the same extent as if it did not bargain, the school board retains the final authority, and the determination of what is in the school district's best interest in the final analysis likewise rests with it.

■ We find that ERB's conclusions of law No. 15(e) in the Springfield case, and No. 8 in the Eugene case, both dealing with student teacher contracts with the University of Oregon, are incorrect. After considering the effect such contracts have on teachers' employment and the extent to which such contracts involve questions of educational policy, we conclude that these are permissive subjects for bargaining.

Affirmed in part; reversed in part.