Argued and submitted November 6, 1981, at Pendleton,
affirmed March 1, 1982

# LA GRANDE POLICE ASSOCIATION,
## *Respondent,*
### *v.*
# HAMILTON,
## *Appellant.*

## (No. 26827, CA A21356)

641 P2d 1132

Stephen P. Riedlinger, La Grande, argued the cause for appellant. With him on the brief was Helm & Valentine, La Grande.

Brian E. Williams, Salem, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Warden and Young, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendant, the city manager of La Grande, appeals from a peremptory writ of mandamus commanding him to execute a collective bargaining agreement between the city and petitioner, the exclusive bargaining representative for the city's police. We affirm.

In late 1979, petitioner notified the city of its intention to negotiate a collective bargaining agreement to replace one which was to expire at the end of the city's fiscal year on June 30, 1980. Petitioner considered the bargaining process to be governed by the Public Employe Collective Bargaining Act (ORS 243.650 to 243.782) (PECBA). However, the city regarded its own charter and ordinance collective bargaining provisions to be controlling. The city procedures are substantially similar to those of PECBA from the inception of bargaining through the post-impasse mediation stage. Thereafter, the city and the PECBA procedures differ markedly. Most significantly, the city provisions do not follow the factfinding and compulsory arbitration procedures in PECBA.[1]

Negotiations between petitioner and the city reached impasse, and the mediation which followed did not achieve a resolution. Petitioner then requested factfinding pursuant to PECBA. The city refused to participate in the factfinding process, and that process was conducted with petitioner as the only participating party. The factfinding procedures were concluded when the factfinder issued findings and recommendations on July 11, 1980, after the city's 1980-81 fiscal year had begun. Shortly before the beginning of that fiscal year, petitioner had petitioned the Employment Relations Board (ERB) to take action to initiate binding arbitration. ERB did so on July 31, 1980. The

---

[1] In *City of La Grande v. Firefighters,* 51 Or App 403, 626 P2d 1, *rev den* 292 Or 334 (1981), and in *City of La Grande v. La Grande Police Assoc.,* 55 Or App 583, 639 P2d 661 (1982), we concluded that the PECBA arbitration procedures were binding on La Grande and that that did not offend the home rule provisions of the Oregon Constitution. In *City of Roseburg v. Roseburg City Firefighters,* 292 Or 266, 639 P2d 90 (1981), the Supreme Court reached the same conclusion and rejected Roseburg's contention that it was not obligated to comply with PECBA's arbitration provisions, but could instead follow local procedures similar to those under the La Grande charter and ordinance. In other words, the underlying issue in this case is not new to us or to the city. The city renews its constitutional argument in the present case, and we again reject it.

arbitration decision was issued on November 17, 1980, and provided, *inter alia,* that members of the bargaining unit were to receive salary increases beginning January 1, 1981. Petitioner prepared a collective bargaining agreement which embodied the provisions of the arbitrator's decision and which was identical in other respects to the previous agreement. Defendant declined to sign the new agreement, and this mandamus proceeding ensued.

Defendant's contention on appeal is that the arbitrator had no authority to award a salary increase to take effect during the 1980-81 fiscal year. He relies on ORS 243.752, which at the time of the relevant events, provided in part:

> "* * * The commencement of a new fiscal year *after the initiation of arbitration procedures* under [PECBA and other statutes], but before the arbitration decision or its enforcement, shall not be deemed to render a dispute moot, or to otherwise impair the jurisdiction or authority of the arbitration panel or its decision. *Increases in rates of compensation* awarded by the arbitration panel under ORS 243.746, *may be effective only at the start of the fiscal year next commencing after the date of the arbitration award. However, if a new fiscal year has commenced since the initiation of arbitration procedures* under [PECBA and other statutes], the foregoing limitation shall be inapplicable and such awarded increases may be retroactive to the commencement of such fiscal year. * * *" (Emphasis added.)[2]

■      The issue is when the "initiation of arbitration procedures" occurred. If the procedures were initiated before the 1980-81 fiscal year began, the arbitrator's compensation award was valid; if the procedures were initiated after the beginning of the fiscal year, the arbitrator had no authority to award a salary increase to become effective

_____

[2] ORS 243.752 was amended by Oregon Laws 1981, chapter 423, section 1. The amendment is not applicable here, and references to ORS 243.752 in this opinion are to the statute before the 1981 legislation.

We note that the salary award was not temporally retroactive, having been made in November, 1980, for the period beginning January 1, 1981. However, it was made during the 1980-81 fiscal year to take effect during that fiscal year. Petitioner does not argue, and we do not suggest, that the salary award was required to be retroactive to the beginnig of the fiscal year.

during that fiscal year.[3] The parties agree that factfinding was not completed until the issuance of the factfinder's report after the 1980-81 fiscal year had begun. Defendant argues that binding arbitration procedures *cannot* be initiated under PECBA before the completion of the factfinding process unless both parties to the dispute agree that arbitration may commmence earlier. Defendant states:

"* * * If no agreement is reached through negotiation, the next step is mediation. ORS 243.712(1). Mediation is conducted within a time span of fifteen (15) days. ORS 243.712(2)(B). If no agreement is reached through mediation, then the fact finding can take place. ORS 743.712(2)(B). Also, an option during mediation is the submission, by agreement of both parties, of the dispute to an arbitrator for a decision. ORS 243.712(2)(C). Factfinding will necessarily take an indeterminate amount of time for hearings to be held. Nevertheless, after hearings are held only thirty (30) days are allowed before they must be served on the parties. ORS 243.722(3). As in the mediation phase, the parties during factfinding may choose to submit the dispute to binding arbitration. If they do so prior to the publication of the factfinding, those findings of fact and recommendations shall not be published. ORS 243.722(4).

"The provisions for voluntary arbitration, coupled with the fact that ORS 243.742 provides for forced arbitration only when the procedure set forth in ORS 243.712 and ORS 743.722 have not culminated in an agreement, lead to the logical conclusion that arbitration cannot be initiated by one party alone until the conclusion of the fact finding process. * * *"

---

[3] Petitioner argues that the statute is ambiguous and that

"[t]he ambiguity of ORS 243.752 arises because of the facts in the case at bar, which are not necessarily peculiar or unlikely to re-occur. If 'initiation of arbitration procedures' means only the start of the arbitration phase of collective bargaining under ORS 243.742 and 243.746, then the labor dispute in the case at bar (and any other labor dispute following a similar time sequence) is unresolvable. [The city manager] is correct in stating that the arbitration phase could not be initiated until after the factfinder's report had been issued. Since the factfinder's report in this case was not issued until after the start of the new fiscal year on July 1st, however, under [the city manager's] interpretation of ORS 243.752, no arbitrator would be able to make an effective and enforceable award for the contract year in dispute, because the new fiscal year was under way when the arbitration phase began.

"There are many conceivable situations in which the parties to labor disputes may not conclude factfinding before the start of a new fiscal year. It is inconceivable that the legislature intended to provide no mechanism for resolving such disputes."

ORS 243.722(4) and 243.712(2)(c), to which defendant refers, provide respectively:

"The parties may voluntarily agree at any time during or after factfinding to submit any or all of the issues in dispute to final and binding arbitration, and if such agreement is reached prior to the publication of the factfinder's findings of facts and recommendations, the board shall not publicize such findings and recommendations."

"Nothing in this section shall be construed to prohibit the parties at any time from voluntarily agreeing to submit any or all of the issues in dispute to final and binding arbitration, and if such agreement is reached said arbitration shall supersede the mediation and/or factfinding procedures set forth in this section."

Defendant is clearly correct in stating that ORS 243.722(4), 243.712(2)(c) and the other provisions to which he refers are inconsistent with one party's unilateral initiation of compulsory arbitration before the mediation and factfinding stages are complete, *if more than one party is participating in the PECBA procedures.* However, it is far from clear that the statement is correct *if there is only one participant.* We are confident that, when it enacted ORS 243.722(4) and 243.712(2)(c), the legislature did not contemplate a situation where one of the parties refuses to follow the PECBA procedures. The words "agree" and "agreeing" in the two statutes demonstrate that the draftsmen did not have such situations in mind. The question is whether the statutes apply to such situations at all, and, if so, how.

The apparent purpose of ORS 243.722(4) and 243.712(2)(c) is to permit the parties to a dispute voluntarily to forego the earlier procedural stages and go immediately to the final stage of the PECBA process, if they choose to expedite a resolution or if they consider that the nonbinding mediation and factfinding stages cannot result in a resolution. By requiring that the parties agree to forego the intermediate stages, the statutes preserve the right of either party to insist that the mediation and factfinding procedures take place. Here, the acceleration provisions of the statutes are as logically applicable as when both parties are attempting to achieve a solution through the PECBA procedures; however, the "mutual agreement" provisions have no logical application in the circumstances here.

Because the city had not submitted to factfinding, it was impossible for factfinding to result in a settlement; because the city refused to participate in factfinding, the statutory reservation of its right to do so under ORS 243.722(4) is not a relevant factor; and because the city regarded its charter and ordinance provisions as precluding submission of the dispute to binding arbitration, it would have been futile for petitioner to seek the city's agreement to the early initiation of binding arbitration.

We conclude that, under facts such as these, ORS 243.722(4) permits the only participant in the statutory process to initiate arbitration procedures before factfinding is completed, whether or not the nonparticipating party concurs. To construe the statute otherwise would be to give it a meaning the legislature obviously did not intend—that a party can resist the procedures mandated by PECBA but can nevertheless rely on a provision of PECBA to hinder those procedures from achieving their purpose.

We do not suggest that defendant and the city sought to frustrate the resolution of their dispute with petitioner. They did not participate in the PECBA procedures because they believed that they could not constitutionally be required to do so. At the time the events in question took place, that belief had not yet been *expressly* rejected by the Supreme Court or this court. *See* n 1, *supra; but see, Medford Firefighters Assn. v. City of Medford,* 40 Or App 519, 595 P2d 1268, *rev den* 287 Or 507 (1979). Whatever a particular party's motives may have been, however, we conclude that the legislature did not intend ORS 243.722(4) to enable a party both to refuse to comply with PECBA and to insist that the intermediate PECBA procedures, which are rendered futile by its nonparticipation, not be dispensed with at the other party's request.

■ The remaining question is whether petitioner's request that ERB initiate arbitration, which was made before the beginning of the 1980-81 fiscal year and before the conclusion of factfinding, was sufficient in itself to initiate arbitration procedures, or whether the initiation of the procedures occurred when ERB acted on the· request after the fiscal year had begun. ORS 243.742(2) provides:

"When the procedures set forth in ORS 243.712 and 243.722, relating to mediation and factfinding of a labor

dispute, have not culminated in a signed agreement between the parties who are prohibited from striking, the public employer or exclusive representative of its employes *shall petition the board in writing to initiate binding arbitration.* In lieu of a petition, the board on its own motion may initiate such arbitration if it deems it appropriate and in the public interest." (Emphasis added.)

Defendant states:

"* * * Petitioner and the trial judge read the statute to mean that a request by one party for arbitration is the same as 'initiation of arbitration.' The statute does not so provide. The *Board* initiates arbitration after a petition for such by a party. In this case the request for the initiation of arbitration took place on June 26 or June 30, 1980, but arbitration was not initiated by the Board until July 31, 1980. Defendants admit that ORS 243.742(2) provides authority to either party to request arbitration but no authority to initiate the same. The authority to initiate arbitration resides solely with the Board, and arbitration begins only when the Board initiates it." (Emphasis defendant's.)

Under these facts, we disagree and conclude that petitioner's request was the event which constituted the "initiation of arbitration procedures." Whether defendant is correct in his understanding of the relative roles a party's request and ERB's action play in the "initiation of arbitration procedures" where ORS 243.722(4) is not involved, the agreement by both parties or the request by the only participating party to accelerate arbitration under that statute must be viewed as the initiating event. As earlier noted, the objective of that statute and of ORS 243.712(2)(c) is to enable the participating parties to abort the intervening PECBA procedures and to commence binding arbitration at any time.

The trial court did not err by ordering the peremptory writ to issue.

Affirmed.