Argued and submitted December 14, 1987, reversed May 11, reconsideration denied August 12, petition for review allowed by memorandum opinion September 20, 1988
See 306 Or 659 (1988)

EUGENE EDUCATION ASSOCIATION,
*Respondent,*

*v.*

EUGENE SCHOOL DISTRICT 4J,
*Petitioner.*

EUGENE SCHOOL DISTRICT 4J,
*Petitioner,*

*v.*

EUGENE EDUCATION ASSOCIATION,
*Respondent.*

(ERB UP-8-87 and UP-18-87; CA A43726)

754 P2d 580

Joe B. Richards, Eugene, argued the cause for petitioner. With him on the briefs was Luvaas, Cobb, Richards & Fraser, P.C., Eugene.

Paul Gamson, Portland, argued the cause for respondent. With him on the brief was Kulongoski, Durham, Drummonds & Colombo, Portland.

Before Warden, Presiding Judge, and Joseph, Chief Judge,* and Van Hoomissen, Judge.

VAN HOOMISSEN, J.

---

* Joseph, C. J., *vice* Young, J., deceased.

## VAN HOOMISSEN, J.

Eugene School District 4J (District) seeks review of an order of the Employment Relations Board (ERB) which held that District had failed to bargain in good faith with the Eugene Education Association (Association) over a contract provision involving teacher seniority in the event of a layoff. *See* ORS 243.672(1)(e). District argues that the specific proposal was a prohibited subject of bargaining, because it conflicted with a statute controlling the same subject. *See* 342.934(3)(c). We reverse.[1]

Association is the representative of District's teachers. During negotiations for a new contract in 1986, Association proposed that seniority in the event of a layoff be determined by a two-track system; there would be one track for part-time (more than half-time but less than full-time) teachers and a different track for full-time teachers. A teacher who was originally hired on a part-time basis but later became full-time would have seniority as a part-time teacher from the date of hire but would have full-time seniority only from the date when the teacher began to work full time.[2] Seniority is important because it plays a major, although not a conclusive, role in determining who will be laid off and when. *See* ORS 342.934.

District refused to bargain over Association's proposal, asserting that it violated ORS 342.934(3), which provides, in pertinent part:

"In determining teachers to be retained when a school district reduces its staff under this section, the school district shall:

"* * * * *

"(c) Determine seniority of teachers to be retained, based on the first day of actual service with the school district. Ties shall be broken by drawing lots."

---

[1] Association asserts that the issue is moot, because District and Association have concluded bargaining and have executed an agreement which does not include the questioned language. ERB's order requires District to cease and desist from refusing to bargain in good faith over the proposal. That order would remain effective between the parties in any future negotiations, if the proposal were made. Therefore, the issue is not moot.

[2] The two-track system was a compromise developed by Association's members, who include both full and part-time teachers.

According to District, that statute requires it to calculate the seniority of a part-time teacher who becomes full-time from the first date of part-time service; thus, it prohibits separate seniority tracks.[3] After hearing District's objection, Association modified its proposal to provide that ORS 342.934 would control in case the statute conflicted with the contract. It did not modify the substance of the proposal. When District continued to refuse to bargain over the two-track seniority proposal, Association filed this unfair labor practice complaint.

In its decision, ERB first noted that ORS 342.934(3)(c) establishes the order of teacher layoffs, a process that otherwise would be the subject of bargaining under the Public Employe Collective Bargaining Act (PECBA). ORS 243.650 *et seq.* ERB then determined that there was a possible conflict between the two statutes. Association argued that, because ORS 342.934(3)(c) did not explicitly cover the situation of a part-time teacher who later became full-time, there was no conflict. Although ERB considered Association's construction to be less plausible than District's "straight-ahead reading," it accepted Association's argument because of its view of the legislature's intent in adopting PECBA:[4]

> "Because the policy and letter of the PECBA require bargaining over such proposals, *we will not construe another statute to prohibit such bargaining unless it does so clearly and unequivocally.* Accordingly, we conclude that while the statute could easily be given the District interpretation, it can also be read, as the Association proposes, in a way that gives effect to all of its words without bringing it into conflict with the Association's two-track seniority system, and consequently into conflict with the PECBA mandate that such proposals be bargained. Said another way, *because the statute does not clearly and necessarily preclude the definition of seniority proposed by the Association, we will not read it to do so.*" (Emphasis supplied.)

ERB incorrectly believed that there was a potential

---

[3] ORS 342.815(8) defines "teacher," for the purposes of the Fair Dismissal Law, as anyone "employed half-time or more as an instructor or administrator."

[4] ERB refused to treat Association's proposed savings clause as relevant to its decision. We agree with ERB that a "proponent's agreement that an unlawful contract provision would be unenforceable does not render it mandatory for bargaining[,] just as a permissive proposal would not become mandatory by reason of a promise not to seek its enforcement."

statutory conflict and that the legislative intent behind PECBA was the source of the resolution of the conflict. The legislature enacts many laws, each with its own purpose. There is usually no basis for deciding that the legislature considers one purpose more important than another. *Compare State Executive Dept. v. OPEU,* 91 Or App 124, 754 P2d 582 (1988). The legislative policy to encourage collective bargaining between public employers and employes, *see* ORS 243.656, does not suggest that the legislature has decided to refrain from controlling any matters that might otherwise be the subject of those negotiations. Indeed, in ORS 342.934 itself the legislature established a detailed scheme for implementing reductions in teaching staffs. Almost every provision of that statute deals with a subject that otherwise might be an appropriate subject of collective bargaining. We see no indication that the legislature intended those provisions to be subordinate to PECBA or that they supersede collective bargaining only if they "clearly and necessarily" preclude it.

Both ERB and we are to construe ORS 342.934(3)(c) by trying to find the intent of the legislature in adopting it. ORS 174.020. As ERB correctly noted, District's construction is the more plausible. Under it, there can be only one seniority track for teachers. Association's proposal would have required District to violate the statute. District did not need to bargain over that proposal, or to offer alternatives to it, because it would have required District to violate the statute. Therefore, the proposal was a prohibited subject of bargaining. *See OSEA v. Oregon State University,* 30 Or App 757, 567 P2d 1085, *rev den* 280 Or 521 (1977); *see also NLRB v. Wooster Division,* 365 US 342, 78 S Ct 718, 2 L Ed 2d 823 (1958); *International Union, Etc. v. N.L.R.B.,* 675 F2d 1257 (DC Cir 1982).

We do *not* hold that ORS 342.934 makes the entire subject of layoffs a prohibited subject of bargaining. District was charged only with refusing to bargain about the two-track layoff proposal. Any provision ultimately included in the agreement must be consistent with the law, and District need not bargain over a specific proposal with which it could not legally comply. *See Sutherlin Ed. Assn. v. Sch. Dist.,* 25 Or App 85, 548 P2d 204 (1976); *Springfield Ed. Assn. v. Sch. Dist.,* 24 Or App 751, 547 P2d 647, *modified* 25 Or App 407, 549 P2d 1151, *rev den* 276 Or 211 (1976). Because that is precisely what ERB's order requires District to do, the order is erroneous.

Reversed.