Argued and submitted November 9, affirmed December 23, 1987, reconsideration denied February 12, petition for review denied April 18, 1988 (305 Or 576)

## LUOTO et al,
### *Respondents,*

*v.*

## LONG CREEK SCHOOL DISTRICT NO. 17,
### *Petitioner.*

## (UP-16-86; CA A43584)

747 P2d 370

Milo Pope, Mt. Vernon, argued the cause for petitioner. With him on the brief was Kilpatricks & Pope, Mt. Vernon.

Henry H. Drummonds, Portland, argued the cause for respondents. With him on the brief were Liana Colombo, Barbara J. Diamond and Kulongoski, Durham, Drummonds & Colombo, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Long Creek School District No. 17 (district) petitions for review of ERB's order that, under district's collective bargaining agreement with the respondent association, it is required to submit to binding arbitration a grievance filed by the association on behalf of respondent Luoto, a discharged probationary teacher.[1] The principal basis for the discharge was that Luoto allegedly failed to complete a program designed by district to improve his ability to maintain classroom discipline.

Article 14 of the agreement provides:

"A.  No teacher will be disciplined, reprimanded, reduced in rank or compensation, or suspended without just cause.

"B.  The provisions of this Article do not apply to the dismissal of a permanent teacher or the non-renewal of a probationary teacher as these matters are governed by the Fair Dismissal Law (ORS 342.805 to .955).

"C.  The principal will provide probationary teachers with assistance in classroom techniques and discipline during the school year. This assistance may be requested by the teacher or as deemed necessary by the Board."

The agreement provides for binding arbitration of grievances, which are defined to include "an alleged violation and/or difference of opinion regarding the meaning or interpretation of this Agreement." The grievance asserted that district had violated Article 14A by "disciplining" Luoto without just cause and that it had violated Article 14C by failing to provide him "with assistance in classroom techniques and discipline."

As best we can ascertain, district makes two arguments for reversal. The first is that ORS 342.835, the Fair Dismissal Law provision relating to discharge of probationary teachers, rather than the Public Employe Collective Bargaining Act (PECBA), ORS 243.650 *et seq*, governs, and that ERB erred by applying PECBA in determining whether the grievance is subject to binding arbitration under the agreement.

---

[1] ERB also concluded that district's failure to submit to arbitration was an unfair labor practice under ORS 243.672(1)(g). District assigns error to that conclusion, as well as to the requirement that it cease and desist from refusing to submit to arbitration of the grievance. District makes a combined argument under the two assignments, and our disposition includes both.

District relies on Article 14B, which provides that the article does not apply to dismissals and nonrenewals which are governed by the Fair Dismissal Law. ERB aptly answered district's argument:

"The District, however, contends that at least the first ground of the grievance is expressly excluded, by virtue of Article 14.B, from arbitration. Section B of Article 14 states that 'the dismissal of a permanent teacher or the non-renewal of a probationary teacher' is not subject to the just cause protection of Section A. Luoto is a probationary teacher whose contract was terminated. The District essentially is arguing that the grievance is not arbitrable because the grievant cannot win. Because the parties did not intend Article 1[4] to apply to the grievance, the District contends, an arbitrator could not uphold Luoto's claim. This argument of the District has everything to do with the merits of the grievance, and nothing to do with its arbitrability." (Footnote omitted.)

In *Beaverton Ed. Assn v. Wash. Co. Sch. Dist. No. 48,* 76 Or App 129, 708 P2d 633 (1985), *rev den* 300 Or 545 (1986), and *N. Clackamas Sch. Dist. v. N. Clackamas Educ. Assn.,* 54 Or App 211, 634 P2d 1348 (1981), we rejected arguments which are materially indistinguishable from district's concerning the relationship of the Fair Dismissal Law and arbitration provisions of agreements under PECBA. We reject district's argument as well.

District's second argument is that ERB expressly declined to apply our decision in *Ostrer v. Pine-Eagle School Dist.,* 40 Or App 265, 594 P2d 1296 (1979), which district contends was binding on ERB and which states that the grievance and arbitration provisions of collective bargaining agreements do not apply to discharges of probationary teachers, unless the agreement "clearly and specifically limit[s] the authority and duty of the school board to discharge probationary teachers." 40 Or App at 272. District is incorrect in its understanding that *Ostrer* is controlling on the arbitrability question here. We said in *N. Clackamas Sch. Dist. v. N. Clackamas Ed. Assn., supra:*

"[I]n *Central Point Sch. Dist. v. ERB,* 27 Or App 285, 291, 555 P2d 1269 [(1976)], *rev den* 277 Or 491 (1977), we held that 'there is no constitutional or statutory proscription against agreements to arbitrate disputes over the application of

agreed procedures relating to teacher renewal.' There the subject of arbitration was teacher evaluations used in making renewal decisions. We noted that, although a school board has statutory authority not to renew a probationary teacher's contract, *see* ORS 342.835(2), it is a 'proper exercise of this authority for a district's board to agree to arbitrate disputes over teacher-evaluation procedures.' 27 Or App at 290.

"The District relies on our later decision in *Ostrer v. Pine-Eagle School Dist.,* 40 Or App 265, 594 P2d 1296 (1979), urging that it is contrary to *Central Point.* That reliance is misplaced. In *Ostrer* we held:

" 'Where * * * the collective agreement does not clearly and specifically limit the authority and duty of the school board to discharge probationary teachers, the agreement on its face does not encompass within its grievance procedures the arbitrability of such discharges.' 40 Or App at 272.

*"Ostrer* did not limit or affect in any manner our decision in *Central Point Sch. Dist. v. ERB, supra.* The two cases deal with different matters. The complainant in *Ostrer,* a probationary teacher, sought to submit to arbitration the district's decision to discharge him. The collective bargaining agreement did not provide for the arbitration of dismissal and nonrenewal decisions. We did question, but did not decide, whether the school district could ever delegate to a third party its power not to renew probationary teachers. *Ostrer v. Pine-Eagle School Dist., supra,* 40 Or App at 269. In *Central Point,* as in the case before us, the issue was whether *teacher evaluation procedures* could be covered by a collective bargaining agreement so that, if not followed, they could become the subject for binding arbitration. *See Ostrer v. Pine-Eagle School Dist., supra,* 40 Or App at 269, n 5. In a recent case, *Portland Assn. of Teachers v. School Dist. No. 1,* 51 Or App 321, 625 P2d 1336 (198[1]), where the teacher evaluation procedures used were challenged as arbitrary and in violation of the collective bargaining agreement, we reaffirmed our holding in *Central Point.*

"In this case, the collective bargaining agreement provides that inequitably applied teacher evaluation policies and practices are subject to binding arbitration. As we held in *Central Point Sch. Dist. v. ERB, supra,* this does not interfere with the District's right and duty to make nonrenewal decisions. If [the teacher] had filed a grievance challenging the *merits* of the District's nonrenewal decision, her grievance would not

have been subject to binding arbitration, because the collective bargaining agreement does not clearly and specifically provide for the arbitration of discharge or nonrenewal decisions. *Ostrer v. Pine-Eagle School Dist., supra.* That, however, was not her grievance." 54 Or App at 222-23. (Footnotes omitted; emphasis in original.)

*See also Beaverton Ed. Assn v. Wash. Co. Sch. Dist. No. 48, supra,* 76 Or App at 140.

■ ■    Similarly here, the grievance is concerned with district's compliance with the collective bargaining agreement, rather than the discharge itself. Both facets of the grievance may be factually *related* to the discharge, as were the evaluations in *N. Clackamas Sch. Dist.* and *Beaverton Ed. Assn,* but neither directly challenges the discharge. As ERB's order points out, Article 14B may prove to be material to *the merits* of the grievance, but that is irrelevant to whether the dispute is *arbitrable* under the agreement.[2]

Affirmed.

---

[2] ERB's order discusses far-reaching issues concerning the proper test of arbitrability under collective bargaining agreement arbitration provisions and concerning the appropriate forum for the initial application of that test. District's arguments do not require us to address those issues. Our affirmance is based solely on the arguments which district advances for reversal of the order.